The first case this morning is United States v. Torres, Mr. Schweitzer. Good morning, Your Honors. My name is Brett Schweitzer of the Federal Defender's Office here, representing Appellant Alberto Torres. At this time, I'd like to respectfully request three minutes for rebuttal. Good. Thank you. Your Honors, I would submit that this is a somewhat unusual case because two basic facts are fairly evident and patently evident on the record. One is that no trafficking conduct, no actual trafficking conduct, happened at the house where the gun was found. And the other is that the gun was never at the locus of any actual trafficking conduct. No, we all agree, everyone agrees that there must be a nexus here. I think that's right. The government's now conceded that and the district court obviously found otherwise. Well, the district court on the safety valve made a finding that the possession was in connection with. Why doesn't that qualify as a finding on the part of the district court here? Well, I think that there was a nexus. That's correct. The district court did make a legal error with respect to the enhancement. The district court made factual findings separately under the safety valve. The court can certainly look at those factual findings. The standards are different under the enhancement. The issue, it's sort of a two-step analysis, presence and not clearly and probably connected with. But looking at all of the facts, so the analysis are not perfectly on square, perfectly the same to test. However, if you look at all the facts, what the district court found with respect to... But the burden's on you at this point, right? Well, no. On the enhancement, yes. I'm sorry, on the enhancement, no. On the safety valve, yes. Right. Correct. But the safety valve, my burden is only 51% on the safety valve. More likely true than not. Correct. So standing back just for a second, and then I'll get back to Judge Sierka's question, the court can certainly find that the sentence, that the safety valve, district court has a safety valve eligible even if the enhancement were denied. That's possible, surely. But we look at the record. And even if the district court made an error on the nexus part, why doesn't his finding on the safety valve and the facts of this case support the granting the enhancement? Sure. Let's look at those facts. So what the judge found with respect to the safety valve is that Mr. Torres was essentially here to deal drugs. That was why he was here in Delaware. And he found that the items found in the house, quote, could be used for packaging. And then the judge found that the gun was accessible in the sense that it was under a couch cushion, as opposed to locked up or somewhere else. The gun was loaded. And was loaded, correct. Sort of wrapped up and concealed? Apparently it was in a towel. Actually, pictures were provided in the discovery, but essentially it looks like it was in a towel maybe to avoid any, you know, the couch getting dirty from the grease or something like that. Let me ask you something. What did Duran mean when he said he had Torres following him to watch his back? So it appears that Torres was, in the transaction that occurred in January, followed in a rental car. So apparently it was. For sightseeing? I mean, doesn't watch his back. No, no, no. That was presumably to, you know, look after the safety of Duran. But that doesn't mean that he was carrying a gun. And why we can infer that is because he did the exact same thing the next day, or two days later in the money transaction, followed in a rental car. He's arrested. He's got no gun. Okay, so what we have here is KW is the government's cooperating witness. You know, the gentleman who's been arrested, who's getting the 5K, who's, you know, going to bat for the witness for the government. He says he never knew Torres ever to have a gun in all the transactions he's ever conducted. Well, of course he could say that. But considering the burden here, which is, you know, very slight, we're not beyond a reasonable doubt. Couldn't a district judge infer from all that that it was more likely than not that he had the gun to use it in connection with the drug transaction? No, Your Honor, because, again, what we have, without speculation, what we have on the record here is the gun's found at the house, not in, you know, certainly in the transaction where he's arrested. The house is for what purpose, though? The house was obtained for use for Mr. Torres when he was here conducting activities in the drug conspiracy. And the district court so found. And the district court so found. No, wait a minute, he's in a different house. The gun was found in a different house. Originally they provided it. That's correct, Your Honor. And then he was in a different location. Absolutely. That's where the gun was. So this is not the house that KW arranged or the apartment that KW arranged. Sometime later, Mr. Torres goes out and gets his own house. But, you know, so the question becomes then, does that inference, or does that fact that the district court certainly relied on, hey, you know, Mr. Torres is really only here to, you know, operate in this drug conspiracy, is that sufficient? And I would say, Your Honors, it's not. And this is, I think, very, very important. What that line of reasoning does is it confuses the reason or the impetus for getting the apartment or the house, even presuming that, you know, that Mr. Torres was in the second house only, you know, in relation to the drug conspiracy, but for that. It confuses the reason for getting the house with what's done at the house. And if I could, if Your Honors would just indulge me for a second, if my family and I live in Philadelphia and I decide to, you know, rent an apartment in New York for my, you know, occasional use because I'm going to go take a job there, that doesn't mean that I do work at my apartment in New York. It doesn't mean that everything I do in my apartment in New York is related to my job in New York. It's just – No, but if you have a briefcase in that apartment in New York, it stands to reason the briefcase is associated with your work, not necessarily, but probably. I think it's a very weak inference here, Your Honors. When you set it up against – If you go to New York for work, it's a weak inference that your briefcase in your New York apartment was associated with your New York lawyer job? Well, I mean, you know, look, if it has, you know, what Mr. Torres was doing here – I'm taking your hypothetical at face value. Yeah. A briefcase is found – you're a lawyer. You go to New York for a law job, and the briefcase is found in your apartment. Isn't it most logical to conclude that that briefcase is associated with your legal work in New York? Well, I don't think so. Who knows what else I'm doing in New York, number one. Number two, what we have here is, you know, if a gun here, which is what we have, is, you know, Mr. Torres is – it's not contested that he's the lawful owner of, he's not a felon, anything like that. Millions of Americans have guns in their home for protection. And that's what Mr. Torres, who, after all, when he was arrested, gave a full debriefing to the government. And with respect to the safety valve, of course, one of those factors is whether the defendant is being truthful. There's never been any allegation here that the defendant was untruthful. And he laid it out all in a line. He admitted to what he did. He admitted to runs that the government never really, you know, surveilled or anything else. But he wasn't going to say what he didn't do and what KEW actually corroborated he didn't do. What if the reason he has the gun truly is for personal safety? But the only reason he fears for his safety is because he's a high-level drug dealer from California? Well, first of all, there's no evidence to support that second inference, number one. Number two, even if – There's no evidence to support the inference he's a high-level drug dealer from California? No, that the only reason he has it is to – is because of fear of drug dealers. Because – Well, we know he's a high-level drug dealer from California who relocated to Delaware for that purpose. You've conceded that, correct? Yes. So why isn't it a reasonable inference to draw that if, in fact, he is afraid for his safety, it's precisely because of that drug dealer? Because the record evidence is that the buyers didn't know where he lived, number one. Number two, if the court were to indulge that inference – That's from KW. That's from KW's proffers. So this notion of he's going to be raided by KW or somebody else is just not borne out by the record. Number two, if the court were to make that sort of conclusion, it really just collapses down into if you're a drug dealer and you have a gun, it's in connection with. Usually, yeah. I mean, that's a tough thing because it is a tool of the trade. It is a tool of the trade, but tool of the trade is not enough. There has to be some evidence. Under the test, under the 2D1.1 test, it's presence and the connection aspect. How do you define presence, though? Presence is – and the courts have, you know, I would point out, this is an absolute – if the court were to apply the enhancement or uphold the enhancement here, this is a frontier case. All of the cases involve one of two things. One, the gun is found in close proximity to actual drugs or paraphernalia. Or number two, the drug is possessed in a location where actual trafficking conduct is happening. So in other words, you know, if Mr. Torres had had the gun during the money exchange or, you know, something else, some other situation. Let me read to you what the First Circuit has said in the McDonald case. To establish the link, the prosecution need only prove the defendant possessed the weapon during the currency of the offense, not necessarily that he actually used it in perpetrating the crime or that he intended to do so. He need not have the weapon on his person for the enhancement. To apply any possession, actual or constructive, can trigger the two-level increase. Do you think that's a good way? I have no argument with that language properly understood. The facts of McDonald, the house is a command post for drug trafficking where drugs, money, digital scales, and all of that paraphernalia is located in the house. I concede, I mean, I have no argument with the application of the enhancement there. Does the Second Amendment impact any of the standards here? I'm sorry, Your Honor? Does the Second Amendment in the Supreme Court's recent ruling, does that impact the standards here? Does it require a closer connection in any way? It does, Your Honor, in the sense that— I mean, they excluded, they said there could be all sorts of regulation of guns. Yes, absolutely. They didn't say you can't have a gun for any legal purpose, but you would seriously maintain that the Second Amendment allows you to have a gun. Here's our position on the Second Amendment. 2D1.1 properly construed, as opposed to how the District Court construed it, would survive a Second Amendment challenge. However, you know, the government, and we're all in agreement with that, so I don't think the Court needs to reach the Second Amendment issue. We have a dispute with the government over, you know, whether mere possession finding would violate the Second Amendment, but I don't think that's necessary to reach here. You know, with respect to the, you know, the test from McDonald, Your Honor, those facts are so distinguishable. It's such a mine run case from those facts, as opposed to what we have here. And when we look at Loney, for instance, where this Court looked at the in-connection language with respect to 2K2.1, this sort of seminal case here in the Third Circuit, what did the Court— those facts, again, drugs packaged for distribution and a gun on a defendant's person. And this Court said that immediate availability, immediate accessibility, the deal goes bad, there's a rip-off, the cops show up, gun, there we go. That's what in-connection means. And so what we have here is obviously miles away from that. So the District Court's focus then on the, quote, accessibility of the gun, is really, I believe, and I would submit to Your Honors, a red herring. Didn't we say in Thornton that the application of this enhancement is governed by its commentary, right? You said that. Sure. There's a commentary explaining it. Absolutely, an application of it. What does that commentary mean, that example about the shotgun or something? What that commentary means is that the shotgun example, and frankly that was raised in Loney as well, discussed in Loney, the same sort of example, means, okay, when there is presence under the guideline, because in that situation you have, in the example you have, there's drug conduct at a house but the gun is sort of in this, it's a hunting rifle in the closet. Right. So what that means is it's going to, assuming there's presence, there's sort of an escape valve for just wild scenarios. Now here, we don't have presence. That's the important first point. Presence means one of those two things. Not only do all the facts of all the cases dictate that, but the test that's been isolated by the circumstance. Let me ask my colleagues if they have any other questions. Good. We'll have you back on rebuttal. Thank you. Thank you very much. Good morning. Good morning, Your Honors. My name is Randy Shaw and I represent the United States of America. Good. Would you agree with that standard under Thornton, that the government must prove that the weapon was present and that it is not clearly improbable that the weapon was connected with the offense? We would agree, Your Honor. However, in this case, the district court did apply that standard. While the district court did not necessarily articulate the application note, when the record is viewed in its entirety, it's clear that the district court did apply that standard, not only finding that the firearm was possessed, but also that it was not clearly improbable. And there's a number of reasons for that. The first. Didn't they sort of give the impression that they felt just having a gun was enough? I would disagree, Your Honor, respectfully. In this case, the district court, and the reason for this is, the district court relied on a number of factors. First was the arguments of counsel. And it's clear from the arguments of both parties, both the government and the defense, that the issue wasn't whether possession alone was enough. The arguments were focused on the issue of whether the firearm was possessed in connection with the drug trafficking. That was the issue by both parties. And furthermore, the district court's reasons for why he was applying 2D1.1, even though he didn't get into in-depth until later, until the safety valve analysis, his reasons initially on pages 80 and 81 indicate that he did consider not just possession, but also that it was connected to the offense. Specifically, the district court found that the defendant was engaged in a long-term, large conspiracy. He described the circumstances under which the firearm was recovered, which was it was under the couch, wrapped in a towel, it was loaded. Furthermore, he also stated that the firearm was accessible to the defendant in case anyone were to threaten him. If the issue were merely whether the firearm was possessed or not, those reasons would be completely extraneous and not necessary. When you look at the arguments of counsel, when you look at the district court's reasonings, and you look at the fact that just a couple pages later, the district court goes into a full analysis of the facts, which are the same for the enhancement as well as for the safety valve. Under those circumstances, it's clear that the district court applied the correct standard and found that not only that there was a firearm possessed, but that it was connected to the defendant's drug trafficking, even though he didn't fully flesh out the issues until the safety valve analysis. Do we just then ignore the fact that he said mere possession was enough? Well, Your Honors, I think that, again, that statement or that quote taken in and of itself seems as if the district court did not apply the correct standard. However, when you look at the arguments, as I stated, of the parties, the district court's reasonings, if he was only considering mere possession, then the defense concession that he possessed that firearm would have been enough, and he certainly did not need to go into the additional reasons as to why he found 2D1.1 applied. Additionally, the district court also adopted the PSR, which states in two separate places, that the standard includes both the possession as well as the connection, or that it's not clearly improbable that it was connected to the drug trafficking offense. And specifically, in the PSR, I believe it's paragraph 33, defense counsel directs the district court judge to that paragraph when she's stating that she objects to the application of the enhancement. And that paragraph itself states the standard, which is that if a firearm is possessed and it's not clearly improbable that it's connected to the offense. So I think under the circumstances, under the entire record, including the arguments, in both the 2D1.1 enhancement as well as the safety valve enhancement, it's very clear to everyone that was in the court that day, government counsel, defense counsel, as well as the judge, that the issue wasn't whether a firearm was possessed. That was the only issue. The judge did not need to go into the explanation that he did, but it was whether it was possessed in connection to the offense, which the judge found it was. Was the inference a proper one, though, in this case? Was the inference that he made a proper one in this case on the facts of this case? I believe that the inference was proper, Your Honor. Take us through again why. In terms of what the connection was? Yes. Okay. The inference was certainly proper here, Your Honor. The biggest factor here is that this case is distinguishable from the cases that the defendant cited because in this case, the defendant's only reason, his sole purpose for being here on the East Coast was to further the object of the conspiracy. The defendant was part of a California-based drug trafficking organization that trafficked a large amount of narcotics. However, his role was to be here as the East Coast representative. In that end, his travel to the East Coast, the temporary lodgings that were arranged for him and that he later arranged for himself, all those steps were taken to further the conspiracy. In that capacity, when the defendant was present here on the East Coast, his only role was as a drug trafficker. He wasn't a law-abiding citizen. He didn't have family. He didn't have other legitimate work. He was on duty when he was here on the East Coast. So does that mean that high-level drug traffickers are automatically liable for this enhancement? No, Your Honor. We know they typically don't keep drugs near them. That's for the mid-level and the low-level guys, right? That's correct, Your Honor, and I would say they're not. So what do you need to show? Do you need to simply show that a guy's a high-level dealer? If he's high-level and he has a gun, that's it. That's not necessarily the case, Your Honor. For instance, by analogy, using the same facts here, if we flip the facts a bit, if this defendant's home in California, say a search warrant was executed on that house, and there was a gun recovered there, while he's here on the East Coast, his operations, he's a drug trafficker 24-7. That's his only reason for being here. If the gun were found in his house in California, that would be a very different circumstance. Even though he's still a high-level drug trafficker, if he's in California where, say, for instance, his family is, that gun wouldn't necessarily be in connection with the offense. It could be for protection of his family. It could be for some other reason. You or one of your colleagues on the other side of the country would be arguing the reason he has a gun in his California house, Mr. Schweitz would say it's to protect his family, and your argument would be, well, the only reason he has it is he's afraid that he's going to get robbed because he's a high-level drug dealer, right? Well, Your Honor, I think under those circumstances, it certainly would require some additional evidence, where here it's very clear that the sole purpose for the defendant being here was to traffic drugs. And every step that he took, travel, obtaining lodging, those steps are all in furtherance of his conspiracy. And furthermore, you look at the circumstances under which the firearms found. Everything he does, even no matter how innocuous, would be for the purpose of furthering the conspiracy. Well, Your Honor, when he's on duty 24-7, we would argue that, yes, that is the case. He goes out and buys a hamburger. That's in furtherance of it. Not a hamburger, obviously, Your Honor. But in this case, a gun is not something that's... So there are some limits. There are, Your Honor. And a firearm is not something that is innocuous. In the example that the defendant or that defense just discussed, the briefcase example, the firearm is, for all intents and purposes, a briefcase. It's part of the defendant's work required or applicable to his work accessories. What about the accessibility issue? I mean, how accessible was it on the facts here? Well, Your Honor, in this case, again, the defendant is charged not with... Well, he's charged with one individual drug trafficking act, but also with a conspiracy that spanned three years. So even if the defendant did not possess the firearm each time he delivered drugs, the focus is not on whether he had it at the site of the delivery. The focus is whether he had it during the currency of the offense. And in this case, he certainly possessed it during the currency of the offense, and he was here on the East Coast in furtherance of the conspiracy. So your argument would be different if the conspiracy had not been charged? It would be, Your Honor. Certainly, if conspiracy was not charged and it was not the defendant's actions here were not part of the conspiracy, his presence here, then our argument would be different. And, again, it's different than a situation where a defendant lives here in Philadelphia, he's got family here. Just because there's a firearm in the house at that point doesn't necessarily mean that it's possessed in connection with his drug trafficking. But the defendant's situation here is not that situation. It's not the situation of the cases cited by the defense. How about the bags, markers, gloves, rubber bands, and whatever else was there? Your Honor, while I don't believe that in and of itself those are sufficient... They never were used in any of the transactions. There's no evidence of that, Your Honor. But as the district court found, those are typically or may be used to package an archivist. Based on what? What in the records could that be based on? Is that in the pre-sentence report? Is there testimony about that in trial? It was in the pre-sentence report that those items were recovered. And I think it's a reasonable inference. Was there anything in the pre-sentence report that said they are typically involved or used in drug transactions? Not specifically to this case, Your Honor. I think it's an inference that the district court reasonably drew... From years of experience. Based on its experience with drug trafficking cases, Your Honor. Can a judge do that? I think a judge certainly can infer based on facts that he's seen whether certain implements may be used to further drug trafficking. Was the house furnished? Your Honor, we don't have specific evidence as to whether it was furnished or not. Or any evidence that there was anything of value in the house? Not on the record, no. Do you rely at all on that statement that I asked the other side about, Doran's statement about him watching his back? Was there any evidence that he was guarding these transactions or anything? Your Honor, there's no evidence in the record that Torres possessed a firearm during the transactions in order to guard Doran. I think that Torres was there under the facts to be more of a lookout for Doran. We all know that drug dealers often have large sums of money or valuable drugs. Certainly, if they're robbed, they can't call 911, so they frequently do have weapons. Was there anything about that in the pre-sentence report? Any testimony about that in the trial? In terms of the possession of large sums of money? Frequently, drug dealers often have to have guns because they're tempting targets. There was nothing about that in the trial or in the pre-sentence report. There was not, Your Honor. It was actually a guilty plea, but the judge did find that. Yeah, you're right. Well, I'm the colloquy, you know. Right. There was not specifically, Your Honor. However, the judge did note that a large amount of currency was involved in each of these transactions that the defendant engaged in. And while there wasn't any currency found at the house, the defendant certainly had large amounts of currency. We don't have evidence that that currency was brought back to the property. And to be honest, I think under the circumstances, it's not required. The district court was able to make a proper finding that the firearm was possessed in connection with the drug trafficking offense because of the defendant's actions, in this case because of the nature in which the firearm was, the circumstances under which it was hidden. So, again, the district judge had to rely to some degree upon the experience of the judge in similar cases. I believe to some degree, Your Honor, but I think the facts here are certainly clear enough and sufficient for the district court to have made the determination that it did. The First and the Tenth Circuits have held that once the government establishes that the weapon was present, it becomes the defendant's burden to show that the connection between the gun and the drug offense is clearly improbable. We haven't said that. Would we need to overrule Thornton in order to say that, or could we say that in this case without doing violence to Thornton? Your Honor, I think in this case where the judge found that there was a connection between the drug trafficking offense and the defendant, I don't think that it would, I don't believe that it creates an issue, Your Honor. What do you think our standard is now, and what do you think it ought to be? The standard is still that the firearm needs to be possessed. Oh, no, I'm sorry, and the burden of proof on that, on the improbability is? The burden of proof, our position is that it's still on the government. It's on the government to say that, to prove that it was possessed, and it's also on the government to prove that it was not clearly improbable, and we believe that the government did that by the evidence that was there. You're not asking us to reconsider that burden of proof, even though other circuits have put the burden on the defendant? We're not asking that at this time, Your Honor. Do you feel that standard passes muster under the Second Amendment? It absolutely does, Your Honor. Certainly there's a connection there, and particularly here it's a connection, which is that's the requirement under the sentencing guidelines, and therefore it doesn't unduly infringe on the Second Amendment. I'm sorry, I cut you off. Just tell us what the government's position is as to what, if you were writing the opinion, what's the standard here? The standard, Your Honor, is that the firearm was possessed and that it was not clearly improbable that it was connected to the drug cartel. Okay, and how do you define possessed? Possessed would be that there is a temporal and spatial nexus which the government has proved through the defendant's actions and presence here. Constructive? I'm sorry, Your Honor? Constructive possession? Well, yes, it's constructive possession, that's correct. It can be either. It could be either, but in this case it is constructive possession because the firearm wasn't on the defendant's person, but it was in the residence and he admitted to possessing the firearm. Now he had the ability to control it. Yes. And do you see the language in Drozdowski? Do you see the factors that we listed in Drozdowski applicable, and where are they applicable? They are applicable here, the four factors. One, the type of weapon. This was a .45 caliber handgun. Two, whether it was loaded or not. It was loaded with six live rounds and there was a box of 32 rounds next to it. Three, whether it was near drugs or drug packaging paraphernalia. In this case, the items that were typically could be used for packing drugs. And then finally, whether it was accessible. And as the district court found on the record, it certainly was accessible. It was hidden underneath the sofa cushion in a place where the defendant could easily access it if he was threatened. Now those factors seem to overlap a bit with the two standards that you enunciated that, of course, come from the guidelines. How would we apply them? Your Honor, my time is up, but I'll respond to the question. The factors for Drozdowski, from my understanding, I believe they apply, and Drozdowski is a case that discusses the weapon enhancement under 2D1.1. So I think those factors are in reference to the not clearly improbable prong. Not the presence prong. I'm sorry, Your Honor? Not the possession or presence prong. That's correct, Your Honor. Okay. That's correct. Does the court have any further questions for me?  Thank you very much, Mr. Shum. Thank you. Mr. Sizer. Thank you, Your Honors. To return to the hypothetical, Your Honor, the difference here is with the New York and the briefcase is that if there were testimony in the hypothetical from my co-workers at the law firm that I never carried a briefcase, then that's not sufficient for the inference. Your Honor asked the question about whether the house was furnished. And, in fact, as my colleague said, there is nothing in the record. If the court would find it useful, there are discovery pictures here which show a perfectly furnished, fully lived-in house. We could certainly provide that. I'm sure there would probably be no issue with that. The second point is that if the court were to – it's absolutely clear that this court applied the wrong legal standard. The government sort of is talking that. It stated the wrong legal standard. That's clear, but I'm not so clear that it applied. Appendix page 81, the defense counsel actually proffers this type of factual connection nexus type of facts, and the district court cuts defense counsel off and says it doesn't matter. They don't have to prove that. All they have to prove is possession. Was that before the safety valve adjudication? Well, I think it would have been – I think it was. I do believe it was. It's page 81 of the appendix. Right. So later, then, in adjudicating the safety valve issue, the court appears to apply that. No, no. It was with respect to the 2D1.1. And so later on the safety valve. But my point is this, Your Honors. I'm not arguing that you can't look at the factual finding under the safety valve and sort of mesh it all together. But my point is this, the government's wrong when they say it didn't – it applied the correct 2D1.1 standard. And why that's important is if this court reviews for clear error, the court is not in a position to make that determination in the first instance. Let's assume you're right on that. I mean, let's assume that it applied the wrong standard to the enhancement, but then it applied the correct standard to the safety valve. If it applied the correct standard to the safety valve and its ruling was not reversible error, isn't there a risk that the essential finding on the safety valve issue renders the error regarding 2D1.1 harmless error? There's a risk, but it's not brought to fruition here for two reasons. Why? Because it's the present standard. Under 2D1.1, it's presence. It used to be something else. It used to be during the offense. Very vague, broad language. Presence talks about – and when you look at all of the cases, I can't emphasize enough how much of an outlier case this would be. But if you look at all the cases, presence means proximity to actual paraphernalia, not made-up paraphernalia that's not related to the case, or to drugs. But do those cases involve tens of kilo quantity dealers? I mean, certainly a street-corner dealer. I mean, if he's not having the gun on his body, on his person, or right around the corner, then he doesn't have it. But why would we apply that sort of physical proximity standard to a guy who's one level below a kingpin? Your guy, this guy is very high up in the chain. He's not in the executive suite. He's handling 24 kilos on the street in a Home Depot parking lot. Your Honor had suggested that, well, he's an upper-level person, so they kind of keep their distance from drugs. That's not what happened here. This person at home, they don't bring them into the house, right? I mean, these – Well, there was no – yeah, his role in this conspiracy was to shuttle the drugs directly from the source in Maryland to various places in Delaware where there were meet-ups with KW. So, you know, but the notion that somehow we should loosen the nexus requirement for upper-level drug dealers because they don't bring themselves in close proximity to drugs is just not borne out. I don't think it's factually righteous in general, but when we look at this case, Mr. Torres had a lot of incentive to carry a gun in this case in these transactions. I mean, these are major deals he could have been ripped off. KW could have gone south. But that's not at issue. At issue is whether he had – he got it here on the East Coast, right? Yes. He comes to the East Coast as a high-level drug dealer. Yes. And he applies for and gets a gun. He has no – as far as I can tell from the record, he has no legitimate employment on the East Coast. Is that right? Well, there's nothing in the record. All right, so if he has no legitimate employment on the East Coast and he gets a gun on the East Coast – This is me going to New York, really. It really is the same thing. What we have here, when we look at real facts as opposed to speculation, we say, well, you know – It's you going to New York and going to the local store and buying a briefcase and putting it in your apartment and then saying, oh, I know I came to New York and bought a briefcase and I put it in my apartment, but trust me, I'm not using it for my legal papers. No, we look at all the actual facts in the case, though. And so in the hypothetical, if, you know, everyone at the law firm says, no, he carries a bike messenger bag, which is what I happen to carry in my real job, then no, the Emirates doesn't hold. Maybe in some other case it holds. But that's not the facts we have here, and we have to look at the facts. The government has the burden. It's a real burden. It's not a no tools of the trade, high level, probably related. That's not what's happening here. This is four levels. This is a huge swing. This is a lot of time for a man in prison. So I would submit that the court should really hold the government to its burden and require some real evidence. Does that mean a remand to the district court? It does not because, I mean, on the factual record here, it's clear that it's insufficient to support the enhancement or, frankly, to disqualify. Without the enhancement, what's the guidelines range? The guidelines range is with the four levels, it goes to 135 to 168. The applied range. I thought 2D1.1 was too low. Well, assuming that the issue we're talking about is going to implicate both the 2D1.1 and the safety valve. No, forget the safety valve. If you went on 2D1.1, what's the guideline? 168 to 210. 168 to 210. He got 180. He got 180. So if we remand and you get a 168 to 210 guidelines range, then he could sentence your guy to 210 and still be within guidelines? That is a fact. Now, what happened here, obviously, in actuality, is he had a downward variance from the applicable guideline range. There's no reason to believe the judge wouldn't do that. Otherwise, we don't know. But it's clear that that doesn't affect the prejudice here in terms of the error and the need for a remand. And, again, I would urge the court, you know, this court isn't in the business. What about Zabielski? Have you had a chance to see Zabielski? Well, with respect to Your Honor, there could be some circumstance where it's so patently clear that there was no effect on. . . I mean, are you familiar with Zabielski? I know it was recently decided. No. I don't want to Pearl Harvey you with something that just came out a month ago. No. I'm sorry, Your Honor. Okay. Specifically. . . We held in Zabielski that the enhancement was legally incorrect, but it was harmless error because the defendant's sentence of 24 months was below what the guidelines range would have been. But I guess here, your argument would be that that's not really apposite because what your guy got, 180, is not below what the adjusted guidelines range would be. That's correct. Okay. So, I mean, it's . . . I think there is prejudice. There's real . . . I don't think that's controversial. It would be procedural. Procedural . . . Procedural violation under . . . Yes, absolutely. Under . . . Absolutely, Your Honor. Good. Any further questions? Mr. Schweitzer, thank you very much. Thank you. Both counsel made excellent argument. We'll take the matter under advisement.